STATE, BARZILLAI NEWBOLD, PROSECUTOR, v. THEOPHILUS T. TAYLOR, OVERSEER OF THE HIGHWAYS, ET AL.

1. An act approved February 17th, 1881, provides that in cases of writs of *certiorari* to review proceedings of a special statutory tribunal, it shall be the duty of the court to determine disputed questions of fact as well as of law.

2. The evidence taken in this case does not show that the determination of two justices of the peace and two surveyors of the highways locates a public road alleged to have been encroached upon by the prosecutor in the place where the road was laid, and does not show that the prosecutor had encroached.

3. On the contrary, the evidence shows that the prosecutor did not encroach on the road, as is set forth in the determination of the justices and surveyors.

On *certiorari*.    In matter of road.

Argued at November Term, 1883, before Justices REED and PARKER

For the prosecutor, *M. R. Sooy.*

For the defendants, *C. E. Hendrickson.*

The opinion of the court was delivered by

PARKER, J.   In the summer of 1882, Theophilus T. Taylor, overseer of road district No. 1, in the township of New Hanover, in the county of Burlington, commenced to plow at the foot of a bank on the west side of a public road in his district, running northerly from the village of Wrightstown and along the land of the prosecutor.   The land west of the foot of the bank never having been worked or used as a highway, the prosecutor objected, and claimed that the overseer was plowing on his land, outside the line of the road. Thereupon, the overseer, being doubtful what person had encroached upon the road, applied to two justices of the peace and two surveyors of the highways to determine who had narrowed and encroached.

The justices and surveyors met, and after viewing the premises and hearing evidence, signed a certificate setting forth that they had surveyed and examined the said highway respecting said alleged encroachment, and determined that said prosecutor and other land-owners on the westerly side of the road had encroached thereon; and they ordered the road to be opened on the prosecutor's land to a line marked by them, at a distance of one and a half rods westerly from a line described in their said determination as the middle of said road.

This *certiorari* brings up the written determination of the said justices and surveyors, with the proceedings touching the same.   The testimony taken is before us.

Among the reasons filed by the prosecutor, one attacks the legality of the determination on the ground of informality of notice of the first meeting, and also for want of notice of an adjourned meeting of the justices and surveyors.   Another reason objects to the uncertainty of the description in the written determination of the part of the road encroached upon.

We think the proceedings in these respects are substantially correct.

But there is a ground of objection which we think well founded. The evidence does not prove that the public road in question runs where the written determination of the justices and surveyors locates it, and consequently does not show that the prosecutor had encroached on it.

An act approved February 17th, 1881, among other things, provides that in cases of writs of *certiorari* brought to review the proceedings of any special statutory tribunal, it shall be the duty of the court to determine disputed questions of fact as well as of law, and to inquire into the facts by depositions, and thereupon to reverse or affirm, in the whole or in part, the order or proceedings, according to the justice of the case. Now, the depositions taken in this case show that .the road lies east of where it is located by the written determination of the justices and surveyors. Although the written determination may not be decisive of the title to the land included in the alleged encroachment, yet if allowed to stand, the practical effect would be to take the use of the land from the prosecutor and open it to the public without compensation. It is important, therefore, that the decision of such special statutory tribunal be proved by the testimony to be correct. If the justices and surveyors have departed from the original location, and by mistake or caprice have altered or widened a road different from where it was laid, the objection is a good one. *State, Clark, pros.,* v. *Pierson,* 8 *Vroom* 216.

This is not a case where a road became a public highway merely by long use, but the evidence shows that the road in question was regularly laid out. The record of the return was produced, and Franklin W. Earl, an experienced practical surveyor, was employed by the defendants to run out the road by the return. This he undertook to do, but the result of his running by the courses and distances of the return did not locate the road where the justices and surveyors have placed it.

The encroachments alleged to have been made by the prose-

cutor lie on the west of the first course described in the return. It was, therefore, important to find the beginning by the description in the return, in order to determine where the first course therefrom fixed the line of the road along the prosecutor's property. Mr. Earl fully comprehended the importance of ascertaining in the outset the true beginning of the road in question, and at once made a survey with that object in view, having the return as his guide. It appeared by the return that the road was laid out in 1801, from Wrightstown to Chapman's Mills, several miles in length and three rods wide. The beginning and first course are thus described in the return, to wit: "Beginning at a stake in the cross-roads in Wrightstown and running (1) north, one degree and thirty minutes east, one hundred and fifty chains and forty-three links, to the Monmouth road; and on the same course, two chains and thirty-eight links more, to a black-oak tree; and on the same course, thirty-three chains and nineteen links, to a stake in William Cook's field," &c. At the monument called for in the Cook field the course changes, and there the first angle is made.

In 1882, when Mr. Earl ran the road, the stake called for by the return as the beginning was gone, and there was no witness to testify in what part of this cross-roads in Wrightstown the stake was driven in 1801. One of the cross-roads referred to was laid in 1797, and another in 1799, and the return of each of those roads calls for a width of four rods. The beginning stake of the road in question, not being found by Mr. Earl, nor its location in 1801 fixed by parol evidence, he adopted the only method to find the beginning that was open to him. He inquired for some known and acknowledged monument in the line of the road in question, with the view of running from it by a reverse course to find the beginning. He was told of a stone which had been put in the crossing of this Chapman Mill road and the Monmouth road, and also of another stone which had been placed where the stake had stood at the first angle in Cook's field. He says he found these stones, and ran back from them, with the proper allow-

ance of variation, and came out easterly of where he afterwards fixed the beginning, which the justices and surveyors adopted in their written determination. Notwithstanding the result of his running the line of the road from these known monuments, Mr. Earl arbitrarily fixed a beginning more than a rod westerly from where he came out by his survey of the road by the return thereof. He did this because the beginning he fixed was in the *centre* of the cross-roads, as they appeared in 1882. The return does not call for the *centre* of the cross-roads, and if it did make such call, there is no evidence that the place which was the *centre* of the cross-roads in 1801 is the *centre* now. Each of those old roads was returned as a four-rod road, and the evidence shows that in 1882 each was only three rods wide, or less, and there is no testimony that they have been narrowed and encroached upon equally on each side.

Mr. Borden and the practical surveyor employed by the prosecutor also ran this road by the return. He found the stone in the first angle in the middle of the road. That this stone was placed there at an early day as in the middle of the Chapman's Mill road is proved by deeds describing the adjoining lands, which call for it as a monument. In 1808, only seven years after this road was laid, a deed from George Cook to Apollo Cook designated it as a corner, and as standing in the middle of the road from Wrightstown to Chapman's Mill. In 1812, a deed from John M. Cook to Barzillai Newbold calls for the same stone as being in the middle of said road. On each of these deeds is a map, made at the time they were respectively executed by the practical surveyor who ran out the lands, on which maps the stone and road, with its course corresponding with the description in the return, are shown. There can, therefore, be no doubt that the stone at the first angle stands in the middle of the Chapman's Mill road, as it was laid in 1801. It was so recognized by the land-owners who lived cotemporaneously with the laying out of the road. It is, therefore, surely a monument from

which to run the return by a reverse course to find the true beginning.

Mr. Borden, after verifying the location of the stone by the deeds, ran from it, by the description in the return, reversing the course and making the proper variation, and he came out very near where Mr. Earl did, being more than a rod east of the point adopted as the beginning by the justices and surveyors in their written determination.

There is another fact that proves the line of the road fixed by the determination is too far west. About six chains northerly from the beginning of the road is a stream of water, over which, by a bridge, the road passes towards Chapman's Mill. The testimony shows that the bridge was originally placed in the middle of the road. It is proved that in rebuilding the bridge from time to time, care was taken to continue the bridge in the same place. The written determination of the justices and surveyors makes the middle line of the road, as therein fixed, cross the stream west of the middle of the bridge.

The determination of the justices and surveyors of the highways is set aside, with costs.